Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 2170 | **DATE** | 3/19/2001 |
| **CASE TITLE** | United States of America vs. Myles Olsen, Jr., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 17 Apr. 01 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The United States' motion for partial summary judgment is denied and Joan Olsen's motion for summary judgment.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 20 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 165 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAP | courtroom deputy's initials | MAR 20 AM 7:53 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>v.<br><br>MYLES OLSEN, JR. et al.,<br><br>              Defendants. | Case No. 98 C 2170<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

The United States brought this action against Myles Olsen to reduce to judgment outstanding federal internal revenue taxes and against Joan Olsen to set aside an allegedly fraudulent conveyance or to collect from property by her as a nominee for Myles Olsen. Before the Court are two related motions for summary judgment. First, the United States moved for partial summary judgment on liability for unpaid federal tax assessments, interest, and other statutory additions accruing from March 13, 2000 in the amount of $1,913,858.80. Second, Joan Olsen moved for summary judgment against the United States on Count II arguing that the United States has waived its nominee and fraudulent conveyance claims.

### BACKGROUND

#### United States' Motion - Count I

On May 12, 1992, a delegate of the Secretary of the Treasury made three separate assessments, pursuant to 26 U.S.C. § 6672,



against Myles Olsen, Jr., as a person required to collect, truthfully account for, or turn over income and Federal Insurance Contributions Act ("FICA") taxes withheld from the wages of the employees of three separate corporations. Notice of the assessments and demand for payment of the following assessments was sent to Myles Olsen: (1) unpaid withheld taxes of Olsen Woodwork Company, in the amount of $984,428.32, for the first, second, and third quarters of 1987; (2) unpaid withheld taxes of Town Cabinet Company, in the amount of $168,142.52, for the first, second and third quarters of 1984 and the first and second quarters of 1985; and (3) unpaid withheld taxes of Southern States Construction Company, in the amount of $75,328.47, for the first, third and fourth quarters of 1987 and the first quarter of 1988.

At his deposition, Myles Olsen admitted that he was liable for employment tax liabilities of Olsen Woodwork, Town Cabinet, and Southern States Construction Company, but he contended that all employment tax liabilities for the period in question were paid in full. In Myles Olsen's Response to the United States' motion for partial summary judgment, he argued, based primarily on an affidavit from Charles Motl, C.P.A., that twelve payments totaling $318,311.05 had not been credited to him. Myles Olsen subsequently filed a motion to compel and for leave to supplement his response in opposition to the United States' motion for partial summary judgment, which this Court granted. In that motion, Myles Olsen

claimed that he had not yet received certain documents from the bankruptcy trustee that were necessary to determine the total amount of additional payments/credits to which he was entitled. After receiving those documents from the bankruptcy trustee, Myles Olsen filed a supplemental response with a new affidavit from Mr. Motl, arguing that the United States' records are seriously flawed and that Myles Olsen has actually overpaid the government. Accordingly, Myles Olsen asserts that there is a material dispute of fact precluding summary judgment at this time.

According to Alver Williams, an IRS employee, none of the checks provided by Myles Olsen demonstrate that the IRS had failed to apply properly the checks to the tax accounts of the three corporations. Furthermore, in her third declaration in reply to Myles Olsen's supplemental response, Ms. Williams attests that Myles Olsen's assertions that he has actually overpaid his taxes are unsupportable. According to Ms. Williams, she was able to find a corresponding credit on an IRS computer transcript that matched the vast majority of the payments that Mr. Motl listed on his summary exhibits. Not all of the payments listed in Mr. Motl's spreadsheets, however, were applied to the three corporations' employment tax (Form 941) but were instead applied to other taxes, like the unemployment tax (Form 940), excise tax (Form 2290), income tax (Form 1120), etc. She concluded that based on all of the records, she was not able to find any "payments by or on behalf

of any of the three corporations for which Myles Olsen was assessed that the IRS did not properly apply." (Alver Williams Third Declaration, ¶ 26.)

**Joan Olsen's Motion - Count II**

Prior to June 27, 1985, Chicago Title and Trust No. 1072725 (the "Trust") held title to the real property known as 17816 Washington Street, Union, Illinois 60180, and Myles Olsen held the 100% beneficial interest in it. On June 27, 1985, Myles Olsen filed a bankruptcy petition for Chapter 11 reorganization and his 100% interest in the Trust became property of the bankruptcy estate.

After this point, the parties dispute the facts. Joan Olsen asserts that she purchased the beneficial interest in the Trust from the bankruptcy estate of Myles Olsen on or about July 14, 1992. *See In re Myles Olsen, Jr.*, 85 B 08155 (J. Ginsberg). The Judge ordered the trustee to accept Joan Olsen's offer to purchase the Trust "free and clear of all liens and encumbrances." She further asserts that the United States was a party to the sale, received notice of the sale, and failed to object to it. The sale was authorized by the bankruptcy court and the trustee was ordered to pay outstanding income taxes on it to the IRS.

While the United States alleged in its complaint that Joan Olson purchased Myles Olsen's 100% beneficial interest in the Trust from the bankruptcy estate in July 1992, Complaint, ¶ 19, the

United States has now changed its story. Now the United States says that Joan Olsen's recitation that she purchased the beneficial interest in the land trust is not only unsupported by admissible evidence but that it is not true. The United States now asserts that there is no evidence that the purchase took place and that instead a document entitled "Assignment of Beneficial Interest" demonstrates that Myles Olsen transferred his interest in the Land Trust to Joan Olsen. The United States further asserts that there is no evidence that it received notice of the sale or that it did or did not object to the sale. It is undisputed that the United States did not present its fraudulent conveyance argument or its nominee theory to the bankruptcy court nor did it file any objections to the sale of the Trust to Joan Olsen.

## DISCUSSION

The court will grant summary judgment if "there is no genuine issue as to a material fact" and the United States is entitled to a judgment as a matter of law. FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In determining whether a genuine issue of material fact exists, the court construes all facts in the light most favorable to the non-moving party and draws all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Both parties agree that federal tax assessments made by a delegate of the Secretary of the Treasury are presumptively correct, and that the burden is on the taxpayer to show by a preponderance of the evidence that the assessment is incorrect. *U.S. v. Running*, 7 F.3d 1293, 1297 (7th Cir. 1993). Once the United States presents an assessment of liability, "the taxpayer bears the burdens of production and persuasion with respect to both the responsibility and willfulness issues." *Id.* at 1297. While Myles Olsen bears the ultimate burden of proving that he was not willful and the burden of proving the absence of available unencumbered funds to pay the taxes, the government must affirmatively set out facts that entitle it to summary judgment.

In his initial response to the United States' motion, Myles Olsen submitted the affidavit of Mr. Motl in support of his argument that the IRS neglected to credit approximately $300,000 against his assessment. Mr. Motl based his assessment on a review of the "checks, bank disbursement records, federal tax deposit slips and statements of account and correspondence." (Motl Declaration ¶ 4.) Myles Olsen also submitted copies of the twelve checks. The United States replied with a second affidavit by Ms. Williams and the IRS transcripts of employment tax accounts for the three corporations. According to the United States, the records reveal that each of the twelve checks was applied to the companies'

accounts with the exception of the ninth check, which was split between seven accounts and two companies.

In his supplemental Response, however, Myles Olsen now argues, based on new documents received from the bankruptcy trustee and a new affidavit from Mr. Motl, that a review of all of the information indicates that the United States owes him money. According to Mr. Motl, he reviewed the various IRS records including all of the IRS literal transcripts for the quarters in question for Olsen Woodwork, Town Cabinet, and Southern States Construction Company as well as various additional records including checks, bank disbursement records, federal tax deposit slips, statements of account, and correspondence. Based on his review of that evidence, he prepared summary schedules that set forth his conclusions and opinions regarding the tax payments made by or on behalf of Olsen Woodwork, Town Cabinet, and Southern States Construction Company. In his affidavit, Mr. Motl states that the "summaries are an accurate compilation and summary of the information set forth in the underlying documentation. I have not included the underlying documentation to this affidavit as it is very voluminous." (Motl Aff., 8/23/2000, ¶ 4.) Mr. Motl now concludes that the total assessed Form 941 tax liability of Olsen Woodwork, Town Cabinet, and Southern States Construction Company for the 4th quarter 1983 through the 4th quarter 1988 was $4,787,111.05, and the total Form 941 tax payments/credits made by

or on behalf of the three companies for the 4th quarter 1983 through the 4th quarter 1988 was $8,993,525.01. (Motl Aff., 8/23/2000, ¶¶ 5(a) and (b)). Mr. Motl determined that the total tax payments/credits covering this time period exceed the total Form 941 liabilities incurred by the three companies by $4,206,413.96, which constitutes an overpayment due to Myles Olsen by the IRS. (Motl Aff., 8/23/2000, ¶¶ 8, 9.)

First, the United States argues that Mr. Motl's affidavit and attached exhibits are not admissible evidence because Mr. Motl does not have personal knowledge that the payments were made as required by F.R.E. 602 and that the summaries attached as exhibits are not admissible because there has been no evidentiary foundation laid that would support the admissibility of the material being summarized as required by F.R.E. 1006.

Federal Rule of Evidence 1006 permits the contents of voluminous writings to be presented in the form of a summary as long as the originals are made available for the examination. Summary evidence will be admissible as long as the underlying documents constitute admissible evidence, and any hearsay problems are satisfied by a conclusion that the underlying documents are themselves admissible. *See Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53 (2nd Cir. 1993). Hearsay, of course, may not be considered on a summary judgment motion. *Eisnsenstadt v. Entel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997)("[H]earsay is inadmissible in summary

judgment proceedings to the same extent that it its inadmissible in a trial.") The Seventh Circuit has explained that admission of summaries is a matter that rests within the sound discretion of the district court. *Needham v. White Labs,* 639 F.2d 394, 403 (7th Cir. 1981).

Here, many of the documents that Mr. Motl relied upon were IRS records and others are business records that can be authenticated at trial. Federal Rule of Evidence 803(6), the business record exception, does not require that the witness have personal knowledge of the entries in the records. *Ameropan Oil Corp. v. Monarch Air Serv.,* No. 92 C 3450, 1994 WL 86701, at *3 (N.D. Ill. March 16, 1994). The United States has had an opportunity to review all of the records that Mr. Motl relied upon for his affidavit and summaries, and therefore they are sufficient to be considered on this motion for partial summary judgment.

Second, the United States argues that even if Mr. Motl's summaries and testimony were admissible, Myles Olsen has failed to demonstrate that there is a genuine issue of material fact as to the amount of his liability. According to the United States, the IRS has properly applied all of the payments that were listed by Mr. Motl in his summary exhibits that could be located on the records of the IRS and that the documents purportedly supporting the remainder of the payments are not adequate to show that the IRS actually received the specified funds. Regarding liability, the

- 9 -

United States argues that Mr. Motl's summaries are significantly understated because they include estimates and fail to include interest and penalties. On the credit side, the United States finds further errors in Mr. Motl's analysis, including misapplication of checks, duplicate payments, checks that were returned for insufficient funds, and payments that lacked any supporting documentation.

The United States' objections, however, are based on Ms. Williams' disagreement with the analysis and conclusions of Mr. Motl. The Court would have to choose to believe Ms. Williams over Mr. Motl, a credibility decision that is improper on summary judgment. Therefore, summary judgment is not appropriate, and the United States' motion for partial summary judgment is denied.

### Joan Olsen's Motion

Next, Joan Olsen moves for summary judgment on Count II of the United States' Complaint. In Count II, the United States alleges that the property held by the Trust is held by Joan Olsen as the alter ego or nominee of Myles Olsen or that the assignment of beneficial interest and transfer of proceeds from Myles Olsen to Joan Olsen to purchase the beneficial interest in the Trust was a fraudulent conveyance and should be set aside.

Joan Olsen first argues that by not objecting during the bankruptcy proceedings, the United States has waived its fraudulent conveyance arguments. The Bankruptcy Court ordered the sale of the

property to Joan Olsen "free and clear of all liens and encumbrances" and the Notice to Creditors informed the creditors of the proposed sale to Joan Olsen. (Memorandum, Exh. C.) As the sale was conducted and authorized by the bankruptcy court, Joan Olsen argues that she is a bona fide purchaser of the property. She further argues that the United States' fraudulent conveyance argument is untimely, as F.R.C.P. 60(b), as applied to bankruptcy proceedings by Bankruptcy Rule 9024, requires any motions seeking relief from an order based on fraud to be brought within one year of that order.

In response, the United States argues that Joan Olsen has not submitted evidence demonstrating that the United States had notice of the sale or standing to object to it. The United States argues that the federal tax assessments involved in this case were not made until May 12, 1992, and thus the federal tax liens that the United States seeks to foreclose in this action did not arise until several months after the Bankruptcy Court approved the sale of the property to Joan Olsen.

Joan Olson attaches several documents titled Form 6338 Proof of Claim for Internal Revenue Taxes (Bankruptcy Code Cases) dated 7/22/85 and 9/15/87 and stamped "Filed" by the United States Bankruptcy Court indicating taxes assessed against Myles S. Olsen. (Reply, Exhibits B, C.) Further, Joan Olsen attached the Notice to Creditors, which gave notice to creditors that Joan Olsen was to

purchase the property prior to the sale and setting a date for all objections to the sale. (Olsen Memorandum, Ex. C.) Furthermore, Judge Ginsberg, Bankruptcy Judge, issued a memorandum opinion regarding Myles Olsen's objection to the United States filing additional claims for taxes to be paid out of the bankruptcy estate. (Memorandum Opinion and Order, dated 1/4/91.) Thus, the United States' argument that there is no evidence that it was a creditor or that it did not receive notice in the bankruptcy proceedings lacks merit.

Where a creditor had notice of a sale but failed to object during the bankruptcy proceedings, the creditor's arguments to invalidate the sale are waived. *In re Cult Awareness Network, Inc. v. Martino*, 151 F.3d 605, 610 (7th Cir. 1998). Confirmed sales are final judicial orders that can be set aside only pursuant to Rule 60(b) and are subject to a one-year limitation. *Met-L-Wood Corp. v. Pipin*, 861 F.2d 1012, 1018 (7th Cir. 1988). When a lien holder seeks to undo a judicial sale, "[t]he law balances the competing interests but weighs the balance heavily in favor of the bona fide purchaser." *In re Edwards*, 962 F.2d 641, 643 (7th Cir. 1992). Orders confirming a sale are appealable, and an order of sale can be rescinded for failing to give notice to the holder of a lien. *Id.* "After the time for appeal passed, the sale could be challenged, if at all, only in accordance with the provisions of Rule 60(b)." *Id.* The decision to set aside a confirmed judicial

sale is an extraordinary one permitted only in very limited circumstances. *See In re Whitney-Forbes, Inc.*, 770 F.2d 692, 697-98 (7th Cir. 1985). Here, the Bankruptcy Court ordered the sale over nine years ago. While the United States argues that Joan Olsen cannot demonstrate that it had notice, the United fails to set forth any evidence, in the form of a sworn affidavit or other document, that it did not have notice of the sale. Even where a creditor fails to receive proper notice, and the United States has not demonstrated that here, the United States' delay of nine years does not demonstrate "such diligence and zeal in the matter as to cause [the Court] to question the benefits of having a strict rule in favor of the bona fide purchaser at the bankruptcy sale." *In re Edwards*, 962 F.2d 641 (7th Cir. 1992).

The United States argues that even if it had standing and had received notice of the sale, the facts supporting its nominee and fraudulent conveyance claims would not have provided a basis for a valid objection to the sale. Assets held by nominees are subject to federal income tax obligations of the taxpayers who have divested themselves of those assets. *See, e.g., United States v. Kitsos*, 770 F. Supp. 1230, 1236 (N.D. Ill. 1991). Both the United States' fraudulent conveyance argument and nominee arguments, however, seek to invalidate the sale and to declare the sale fraudulent. The United States fails to cite authority to support

this proposition, and the Court fails to see why a fraudulent conveyance would not have provided a valid objection to the sale.

## CONCLUSION

Therefore, for the foregoing reasons, the United States' motion for partial summary judgment is denied and Joan Olsen's motion for summary judgment is granted.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: March 19, 2001