# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 2170 | **DATE** | 7/18/2001 |
| **CASE TITLE** | United States of America vs. Myles Olsen, Jr., et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The United States' Motion for Reconsideration of this court's March 19, 2001 ruling granting Joan Olsen's motion for summary judgment on Count II of the complaint is granted and the Court's opinion of March 19, 2001 is vacated. Joan Olsen's motion for summary judgment on Count II of the complaint is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 19 2001 | |
| | Notified counsel by telephone. | | date docketed | 127 |
| ✓ | Docketing to mail notices. | | CM | |
| | Mail AO 450 form. | FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 JUL 18 PM 4:20 | date mailed notice | |
| WAP | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED
FILED JUL 1 9 2001
JUL 1 8 2001
Judge Harry D. Leinenweber
U.S. District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

v.

MYLES OLSEN, JR. et al.,

                Defendants.

Case No. 98 C 2170

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff, the United States, has filed a motion for reconsideration of this court's March 19, 2001 ruling where it granted Defendant Joan Olsen's motion for summary judgment on Count II of the United States' Complaint. In this motion for reconsideration, the United States argues that the court misunderstood or failed to apprehend the nature of the United States' nominee claim, and overlooked the United States' fraudulent conveyance claim in the March 19, 2001 ruling.

### INTRODUCTION

In Count II of the Complaint, the United States alleges that the federal tax liens that arose with assessments against Myles Olsen, Jr. attached to the real property at 17816 W. Washington Street in Union, Illinois (the "Union property"). Record title to the Union property is held by Chicago Title and Trust Company as Trustee of Illinois Land Trust No. 1072725. Joan Olsen, Myles Olsen's wife, holds the record beneficial interest in the land

trust. On May 12, 1992, a delegate of the Secretary of the Treasury made three separate assessments, pursuant to 26 U.S.C. § 6672, against Myles Olsen, Jr., as a person required to collect, truthfully account for, or turn over income and Federal Insurance Contributions Act ("FICA") taxes withheld from the wages of the employees of three separate corporations.

Prior to June 27, 1985, Chicago Title and Trust No. 1072725 (the "Trust") held title to the real property known as 17816 Washington Street, Union, Illinois 60180, and Myles Olsen held the 100% beneficial interest in it. On June 27, 1985, Myles Olsen filed a bankruptcy petition for Chapter 11 reorganization and his 100% interest in the Trust became property of the bankruptcy estate.

Joan Olsen asserts that she purchased the beneficial interest in the Trust from the bankruptcy estate of Myles Olsen on or about July 14, 1992. *See In re Myles Olsen, Jr.*, 85 B 08155 (J. Ginsberg). Judge Ginsberg ordered the trustee to accept Joan Olsen's offer to purchase the Trust "free and clear of all liens and encumbrances." She further asserts that the United States was a party to the sale, received notice of the sale, and failed to object to it. The sale was authorized by the bankruptcy court and the trustee was ordered to pay outstanding income taxes on it to the IRS.

The United States has several alternative theories by which the federal tax lien against Myles Olsen attached to the beneficial interest in the Union Property. First, the United States asserts that Joan Olson purchased Myles Olsen's 100% beneficial interest in the Trust from the bankruptcy estate in July 1992 as Myles Olsen's nominee. Second, the United States asserts that Myles obtained proceeds of a loan secured by the Union Property, and then transferred those proceeds to Joan for use in purchasing the Union property from the bankruptcy estate. The United States alleges that Myles Olsen's transfer of those funds to Joan was a fraudulent transfer. Alternatively, the United States alleges that Myles Olsen acquired the Union Property from the bankruptcy estate and then he conveyed it to Joan, constituting a fraudulent transfer.

It is undisputed that the United States did not present its fraudulent conveyance argument or its nominee theory to the bankruptcy court nor did it file any objections to the sale of the Trust to Joan Olsen. Joan Olsen moved for summary judgment against the United States on Count II arguing that the United States has waived its nominee and fraudulent conveyance claims by failing to object to the sale.

## DISCUSSION

Joan Olsen did not respond to the United States' Motion for Reconsideration on the merits, but instead she argued that the United States' motion lacked a proper procedural basis because

neither FED. R. CIV. P. 59(e) or 60(b) permit the court to reconsider a non-final, interlocutory ruling. In its Motion for Reconsideration, the United States failed to identify the rule under which it brought the motion, but it argues two bases in the reply brief.

Joan Olsen is correct that neither Rule 59(e) nor Rule 60(b) apply here because the ruling did not dispose of the entire case and the court did not enter a final judgment. See FED. R. CIV. P. 59(e) ("Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment"); FED. R. CIV. P. 60(b) ("On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding.").

Several courts in this jurisdiction have held that motions to reconsider an interlocutory order may be brought under Rule 54(b), which allows a court to revise an order at any time before the entry of a final appealable judgment. See FED. R. CIV. P. 54(b) ("any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims.").

As the summary judgment motion on Count II involved waiver, an affirmative defense, it is not clear that Rule 54(b) would apply. Rule 54(b) applies to "claims for relief" and specifically applies to counterclaims and cross-claims, but courts have questioned whether it applies to affirmative defenses. *See Neal v. Honeywell, Inc.*, No. 93 C 1143, 1996 WL 627616, *2 (N.D. Ill. Oct. 25, 1996). In any event, the United States may seek reconsideration through another avenue. Courts in this jurisdiction have recognized common law motions for reconsideration of interlocutory orders. *Id,* citing cases. *See also United Air Lines, Inc. v. ALG, Inc.*, 916 F. Supp. 793 (N.D. Ill. 1996). Thus, the court will address the United States' motion for reconsideration on the merits.

Motions for reconsideration serve a limited function and will be granted only where "the court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Motions for reconsideration also may be proper where there has been a controlling or significant change in the law or facts. These types of problems "rarely arise and the motion to reconsider should be equally rare." *Id.* Here, the United States argues that the court has misapprehended and misunderstood its arguments in response to Joan Olsen's motion for summary judgment. While the court is very

reluctant to reconsider prior orders, after careful evaluation of this matter the court finds that reconsideration is appropriate.

### The Nominee Claim

The United States' first theory is that Joan Olsen holds the record beneficial interest in the land trust as the nominee of Myles Olsen. The United States argues that its nominee claim relies on the validity of the sale and it is merely arguing that Joan Olsen, as the purchaser in the sale, acted as an agent for Myles Olsen, who is the true owner.

"Property of the nominee or alter ego of a taxpayer is subject to the collection of the taxpayer's tax liability." *United States v. Hatfield*, No. 94 C 50397, 1996 WL 153686, *7 (N.D. Ill. April 2, 1996), citing *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 351, 97 S. Ct. 619, 627-28 (1977). See also *United States v. Kitsos*, 770 F. Supp. 1230, 1236-37 (N.D. Ill. 1991)(finding that while there was not precedent in Illinois, precedent from other jurisdictions "has uniformly subjected assets held by . . . nominees to the federal income tax obligations of the taxpayers who have divested themselves of those assets."). The "nominee theory is utilized to determine whether property should be construed as belonging to the taxpayer if [he] treated and viewed the property as [his] own, in spite of the legal machinations employed to distinguish legal title to the property." *In re Richards*, 231 B.R. 571, 578 (E.D. Pa. 1999). Thus, the analysis focuses on the

relationship between the taxpayer and the property and examines "whether the taxpayer has engaged in a sort of legal fiction, for federal tax purposes, by placing legal title to property in the hands of another while, in actuality, retaining all of some of the benefits of being the true owner." *Id.*

Here, the issue was whether the Government waived its claim that Joan Olsen owned the property as the nominee of Myles Olsen by not objecting to the sale of the property from the bankruptcy estate to Joan Olsen. In this court's March 19, 2001 Memorandum Opinion and Order, the court said that it did and that, in essence, the United States was trying to invalidate the sale.

Upon reconsideration, however, the court finds that the United States did not waive its nominee argument. The United States' nominee theory addresses the way in which Myles and Joan Olsen viewed and treated the property. Myles Olsen's tax liability was nondischargeable, and when liability was assessed the lien attached to any property that Myles acquired after the bankruptcy petition. Thus, if, as the United States argues, Joan Olsen purchased the property as nominee for Myles Olsen, the sale was valid and the United States' failure to object to the sale could not have worked a waiver. None of the cases that Joan Olsen cited in her summary judgment motion or in response to the United States' Motion for Reconsideration requires that a creditor asserting a claim of

nominee ownership must undo or invalidate the sale by which the nominee obtained the property.

Further supporting the conclusion that the United States did not waive its nominee claim is that the United States could not have known that it had a nominee claim until after Joan Olsen actually took record title to the property in 1992. The events that the United States alleges support its nominee theory occurred after the date that the bankruptcy court authorized the sale in September 1991.

### The Fraudulent Conveyance Claims

Next, the United States makes two alternative fraudulent conveyance claims and argues that it did not waive those claims by failing to object to the bankruptcy sale. In its first fraudulent conveyance argument, the United States argues that Myles Olsen obtained funds from Harris Bank Marengo by mortgaging the Union property, and that he subsequently transferred those funds to Joan Olsen who used them to purchase the Union property in the bankruptcy sale. The United States alleges that the transfer of those funds from Myles Olsen to Joan Olsen was a fraudulent conveyance because the transfer was made without consideration, it left Myles Olsen insolvent, or it was made to hinder, delay, or defraud his creditors. See 740 ILCS 160/5-6, 8.

Without expressing any opinion regarding the merits of this fraudulent conveyance argument, it is clear that failing to object

to the sale did not constitute a waiver of this argument. The United States is not arguing that the sale was invalid, but instead that the funds that Joan Olsen used to make the purchase in the bankruptcy sale were fraudulently conveyed to her. This court's previous ruling that the United States sought to invalidate the bankruptcy sale was erroneous.

In its second fraudulent conveyance theory, the United States' argues that Myles Olsen acquired the Union property from the bankruptcy court and that he conveyed the property to Joan. It was the transfer of the property from Myles Olsen to Joan that was a fraudulent transfer, not that the sale of the property from the bankruptcy estate was a fraudulent transfer. Again, without expressing any opinion regarding the merits of this fraudulent conveyance argument or the United States' ability to support the argument, the court finds that its previous ruling that the United States had waived this argument was erroneous. The United States is not seeking to invalidate the sale of the property from the bankruptcy estate, but is instead arguing that the post-sale transfer of the Union property to Joan Olsen was a fraudulent conveyance.

## CONCLUSION

For the foregoing reasons, the United States' Motion for Reconsideration of this court's March 19, 2001 ruling granting Joan Olsen's motion for summary judgment on Count II of the complaint is

granted and the Court's opinion of March 19, 2001 is vacated. Joan Olsen's motion for summary judgment on Count II of the complaint is denied.

**IT IS SO ORDERED.**

                                                       Harry D. Leinenweber, Judge
                                                       United States District Court

Date: July 18, 2001